**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jose Luis Z.S.,

Petitioner,

v.

Todd Blanche, acting U.S. Attorney General; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; David Venturella, Acting Director of Immigration and Customs Enforcements; David Easterwood, Acting Director, St. Paul Field Office, Immigration and Customs Enforcement,

Respondents.

Case No. 26-cv-2862 (KMM/SGE)

**ORDER**

---

Federal immigration authorities arrested Jose Luis Z.S. ("Mr. Z.S." or "Petitioner") on March 10, 2026, immediately transferring him to Crookston, Minnesota for detention. On June 5, 2026, Mr. Z.S. filed a Petition seeking a Writ of Habeas Corpus. (Dkt. 1). Upon review of Mr. Z.S.'s petition and responsive documents filed by the United States, Magistrate Judge Shannon G. Elkins recommended the petition be granted in part and denied in part. (R&R, Dkt. 13.) Both parties timely objected to Judge Elkins's report and recommendation ("R&R"). (*See* Dkt. 14 and Dkt. 15.) Having carefully reviewed the R&R, objections, the response submitted by Mr. Z.S., and all other supportive filings and relevant

caselaw, the Court adopts the R&R[1] granting Mr. Z.S.'s petition in part and denying his petition in part.

**BACKGROUND**

Mr. Z.S. is a citizen of Ecuador. (Dkt. 1, ¶ 7.) He entered the United States in March 2024. (*Id.* ¶ 14.) He was briefly detained when he entered the United States, but was released on his own recognizance without formal admission. (*Id.* ¶ 15.) A short time later, Mr. Z.S. filed an application for asylum. (*Id.*) And, in January 2025, immigration officials granted Mr. Z.S. an Employment Authorization Document. (*Id.* ¶ 16.)

Mr. Z.S. lives and works in North Dakota with his family and has remained law abiding from the time he entered into the United States. (*Id.* ¶¶ 7, 16–17.) Though Mr. Z.S. had prior interactions with Immigration and Customs Enforcement ("ICE"), this habeas case arises from his detention beginning on May 1, 2026. (*Id.* ¶ 21.) That day, he appeared at a scheduled check-in at the Grand Forks ICE office and ICE took him into custody. (*Id.*)

On June 2, 2026, the immigration judge denied his application for asylum and ordered him removed to Ecuador. (*Id.* ¶ 25; Dkt. 7, Minner Decl. Ex. 1.) An 1-205 Warrant of Removal was issued the following day. (Dkt. 7, Minner Decl. Ex. 2.)

After this hearing, there was some uncertainty as to whether Mr. Z.S. waived his right to appeal the removal order. He verbally indicated that he would waive his right to appeal. (*See* Dkt, 8, Ganzhorn Decl. Ex. 1, at 1:35–3:28.) However, he was not represented by counsel and required an interpreter throughout the proceeding. (*Id.*) On June 5, 2026,

[1] The Court adopts all of Judge Elkins's analysis but makes minor changes to the decretal language.

Mr. Z.S. filed an appeal to the Board of Immigration Appeals ("BIA") with the assistance of counsel. (Dkt. 1 ¶ 25; Dkt. 18, Keziah Decl. Ex. A.)

On June 5, 2026, Mr. Z.S. also filed this Petition challenging his arrest and custody as unconstitutional and seeking immediate release. His claims and the Respondents' answer were considered by Magistrate Judge Elkins. On July 31, 2026, Judge Elkins concluded that Mr. Z.S.'s detention did constitute a violation of his due process rights. In her R&R, she recommended that the Court require the BIA to hold a bond hearing for Mr. Z.S. The R&R, as well as objections from both parties, are now in front of this Court for consideration.

**I. The R&R**

The "threshold issue" for Magistrate Judge Elkins was whether ICE detained Mr. Z.S. pursuant to U.S.C. § 1226(a) or pursuant to U.S.C. § 1231(a)(1)(A). (Dkt. 13 at 3.) Judge Elkins found that if § 1231(a) controls Mr. Z.S.'s detention, as Respondents argue it does, "[Mr. Z.S.] has no basis to challenge his current detention." (*Id.*) Judge Elkins concluded that §1231(a) does not apply because Mr. Z.S. filed an appeal with the BIA a few days after his asylum hearing in June of 2026, so he does not have a final order of removal. (*Id.* at 4.)[2]

[2] Magistrate Judge Elkins acknowledged that it would be up to the BIA to determine whether or not Mr. Z.S. waived his appeal. And, at the point of filing, what they would decide was an open question. However, in the weeks since the R&R issued, the BIA has provided "confirmation that [Mr. Z.S.'s] notice of appeal was accepted by the Board." (Status Report from Plaintiff's Counsel, Dkt. 17 at 1.) Moreover, as to this issue, the government did not object to Judge Elkins's decision to treat Mr. Z.S. as being detained before his removal order was finalized. This Court reviewed this portion of Judge Elkins's R&R for clear error and agrees with her analysis.

Finding § 1231(a) inapplicable, Judge Elkins next analyzed Petitioner's due process claim "using the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." (*Id.* at 5.)[3] This three-part balancing test weighs: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Id.* at 6 (quoting *Mathews*, 424 U.S. at 321).)

Magistrate Judge Elkins concluded "that the *Mathews* factors weigh in [Petitioner's] favor and that mandatory detention under § 1225(b)(2)(A), as applied to [Mr. Z.S.] in this case, violates his constitutional right to procedural due process." (*Id.* at 8–9.) The appropriate remedy, she found, is for the Respondents to provide Petitioner with a bond hearing. (*Id.* at 9.)

## II. Objections to the R&R

Both parties timely objected to the R&R. The United State objects to the R&R on three grounds. First, that it misapplied the *Mathews* test. Second, that even if *Mathews* were an acceptable route for relief, the appropriate remedy would not be a bond hearing. And,

[3] In analyzing Mr. Z.S.'s due process claim, Judge Elkins notes that it is the "dispositive issue." (Dkt. 13 at 5.) Later she explains that "[b]ecause the Court determines that [Petitioner's] Due Process argument requires granting relief, the Court does not reach his arguments under the Fourth Amendment, *Accardi*, or the APA." (*Id.* at 9, n. 6.) Neither party address these claims in their objections, so this Court agrees with Judge Elkins's assessment.

finally, that even if *Mathews* factors were applied to this case, Mr. Z.S. is not entitled to a bond hearing because no due process clause violation exists. (Dkt. 14.)

Mr. Z.S.'s Objection to the R&R challenged the remedy recommended by Magistrate Judge Elkins. Mr. Z.S. argues that, in general, the remedy in cases of unlawful detention "is outright release rather than a bond hearing." (Dkt. 15 at 2.) In addition, he asserts that his re-detention was unlawful because Respondents provided no evidence that Mr. Z.S. has breached any of the conditions of his release at the time of his re-arrest. (*Id.* at 8.)

The Court carefully considers objections from both parties in assessing the R&R.

## DISCUSSION

### I. Legal Standards

Because this case involves timely and specific objections, the Court's review is de novo. *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). District court judges "may accept, reject, or modify in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

A writ of habeas corpus may be granted to any person who shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement through a habeas petition "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## II. Due Process

Respondents first invoke 8 U.S.C. § 1225(b)(2) to justify Mr. Z.S.'s detention without a bond hearing, and the Eighth Circuit has recently approved application of that statutory provision to any alien who is present in the United States without having been admitted or paroled into the country. *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). But *Avila* does not address any limitations upon that detention authority that may be imposed by the U.S. Constitution. *Id.* at 1140 n.8 (Erickson, J., dissenting); *Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656, at *2 (D. Minn. July 2, 2026). Subject to a provision that mandates detention across the board, Mr. Z.S. contends that he is deprived of due process of law based on his detention. Magistrate Judge Elkins agreed in her R&R, and after careful consideration of the record and law, this Court does as well.

### A. The Due Process Clause Applies to Petitioner

Under the Fifth Amendment's Due Process Clause, "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. That protection from deprivation extends to all persons, including noncitizens who entered the United States unlawfully. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that the due process clause applies to every person in the United States "whether their presence here is lawful, unlawful, temporary, or permanent"); *Osman J.M.A. v. Blanche*, No. 26-cv-2123 (DWF/DJF), 2026 WL 1005056, at *2 (D. Minn. Apr. 14, 2026). The fact that Mr. Z.S. entered the United States without admission or parole does not mean that the protections of the Due Process Clause do not apply to him.

That is so because "[f]reedom from physical restraint 'lies at the heart of the liberty' that the Due Process Clause protects." *Felipe S.P.*, 2026 WL 1911656, at *2 (quoting *Zadvydas*, 533 U.S. at 690). Indeed, freedom "from physical detention is the most elemental of liberty interests." *Id.* (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion)). And while it is true that "Congress has plenary power over immigration, and the Executive Branch has broad discretion in enforcing immigration laws[,] . . . the exercise of that power must comply with the Constitution." *Felipe S.P.*, 2026 WL 1911656, at *2 (citations and quotations omitted). "Detention is a constitutionally permissible part of removal proceedings. . . . But in this context, it implicates an important liberty interest protected by the Due Process Clause, so it must serve a constitutionally acceptable purpose." *Id.* (cleaned up).

The Supreme Court has made clear that outside of detention in connection with criminal proceedings, when the government seeks to deprive a person of liberty in a civil matter, the Due Process Clause allows it to do so only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up). And so, the question becomes what constitutionally acceptable purpose is served by the detention of an alien under 8 U.S.C. § 1225(b)(2)—the authority the government invokes here. In the immigration context, the Supreme Court has recognized that the government's interests in preventing flight risks and protecting the community may support detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Detention during [immigration] proceedings gives immigration officials time to determine an alien's status

without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). Like other courts have recently found, this Court finds the government's interests in "[e]nsuring appearance at future proceedings and limiting threats to public safety are interests that can justify detaining noncitizens like [Mr. Z.S.]" *Felipe S.P.*, 2026 WL 1911656, at *4; *Anthony Javier R.M.*, 2026 WL 1506306, at *9. And in this case, Mr. Z.S.'s claim is that "by denying him *any* procedure for assessing his danger or flight risk, the government has taken his liberty in violation of the Due Process Clause." *Felipe S.P.*, 2026 WL 1911656, at *4.

### B. The *Mathews* Balancing Test

To resolve Mr. Z.S.'s due process claim, Magistrate Judge Elkins applied the test set forth in *Mathew v. Eldridge*, 424 U.S. 319 (1976). Other courts in this District, including the undersigned, have done the same. *Julio Victor R.R. v. Blanche*, No. 26-cv-2853 (KMM/DJF), 2026 WL 2517137, at *6–8 (D. Minn. Aug. 26, 20260; *Anthony Javier R.M.*, 2026 WL 1506306, at *8–10 (applying Mathews to a similar claim); *Felipe S.P.*, 2026 WL 1911656, at *7–10 (same). Judge Elkins concluded "that the Mathews factors weight in [Petitioner's] favor and that mandatory detention under § 1225(b)(2)(A), as applied to [Mr. Z.S.] in this case, violates his constitutional right to procedural due process." (R&R at 8–9.)

Respondents object to that conclusion on several grounds, but they first contend that the *Mathews* framework is inapplicable in this context. They argue that the *Mathews* test is not an individualized test, but "a means of assessing whether statutorily created rights comport with due process." (*See* Dkt. 14 at 3–4.) Though the *Mathews* test was created in

a case assessing deprivation of a statutorily created right, it cannot be that rights created by statute are granted procedural protections when a right expressly enumerated in the Constitution is not. As Judge Brasel explained in *Felipe S.P.*, "[b]ecause the fundamental interest at issue here—freedom from bodily restraint—is expressed in the Due Process Clause, government detention violates the Clause except in certain special and narrow nonpunitive circumstances." 2026 WL 1911656, at *2 (quoting *Zadvydas*, 533 U.S. at 690) (cleaned up).

Moreover, the Supreme Court has repeatedly made clear that the protections of the Due Process Clause apply to persons here illegally: "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases). Respondents' position that aliens without permission to be here do not have any liberty interest beyond that afforded to them by statute runs afoul of this jurisprudence. So, the undersigned joins the "federal courts around the country apply[ing *Mathews*] when analyzing what process the government owes noncitizens detained during removal proceedings, including those

detained under Section 1225(b)(2)." *Felipe S.P.*, 2026 WL 1911656, at *7; *see also id.* at *7 n.4 (collecting cases).[4]

Turning to application of *Mathews* itself, the Court agrees with Judge Elkins's finding that continued detention of Petitioner implicates a serious liberty interest. (Dkt. 13 at 7 (explaining that the petitioner's "interest in being free from detention is the 'most elemental of liberty interest'") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).) In light of Petitioner's continued detention at a holding facility in Louisiana – and before that the Whipple Federal Building in Minnesota – the Court agrees that the first factor weighs in Mr. Z.S.'s favor. *Anthony Javier R.M.*, 2026 WL 1506306, at *8 (finding the first *Mathews* factor weighed in the petitioner's favor).

Next is the risk of erroneous deprivation of this liberty interest. In the detention context, "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001). As discussed above, the interests at issue here are: (1) ensuring that the noncitizen will appear for immigration proceedings; and (2) preventing danger to the community. *See Jennings*, 583 U.S. at 286 ("Detention during [immigration]

[4] Although Respondents criticize the use of the *Mathews* test in this context, they do not suggest an alternative framework. Instead, it appears that they dispute fundamentally whether a liberty interest exists at all for noncitizens outside of one afforded by statute. The Court observes that the Third Circuit has adopted a different multi-factor test to consider due process issues in the context underlying *Banyee*, namely when detention of criminal aliens pursuant to 8 U.S.C. § 1226(c) becomes unreasonably prolonged. *German Santos v. Warden*, 965 F.3d 203, 211 (3d Cir. 2020) (applying a four-factor reasonableness test). Both frameworks rely on the same premise: that the due process clause protects a liberty interest for detained noncitizens, but given that *German Santos* is trying to assess when that detention becomes unlawful due to its duration, additional considerations are required.

proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.").

Here, the undersigned agrees with Magistrate Judge Elkins: "'A substantial risk of erroneous deprivation of liberty exists' for a noncitizen, like [Mr. Z.S.], who is detained without an individualized determination." (Dkt. 13 at 7.) There is no way of determining whether either of the two regulatory goals articulated above are advanced by Mr. Z.S.'s detention without an individualized assessment of his case. The simple fact that, as interpreted by *Avila*, Mr. Z.S. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), isn't enough. To date Respondents have not given Mr. Z.S. any individualized review with respect to the need for his detention, and he has not received a hearing to contest whether his detention is necessary.

Petitioner's only objection with respect to Judge Elkins's analysis of this second prong is that the fact that Mr. Z.S. is actively in immigration proceedings "ensure[s] that the risk of erroneous deprivation would be 'relatively small.'" (Dkt. 14 at 7 (quoting *Rodriguez Diaz v. Garland*, 53 F.3d 1189, 1210 (9th Cir. 2022).) This Court disagrees that the INA alone sets the floor for the due process that is required; the Constitution can, and does, require more. *See, e.g.*, *Zadvydas*, 533 U.S. at 690; *Felipe S.P.*, 2026 WL 1911656, at *2.

Ultimately, this Court agrees with others that have found there is a high risk of erroneous deprivation of liberty in this context without an individualized bond hearing to assess whether Mr. Z.S.'s detention is necessary to ensure his appearance for immigration

proceedings and prevent danger to the community. *Anthony Javier R.M.*, 2026 WL 1506306, at *9; *Felipe S.P.*, 2026 WL 1911656, at *8–9; *David J.C.P. v. Blanche*, No. 26-cv-2181 (DWF/ECW), 2026 WL 1102725, at *3 (D. Minn. Apr. 23, 2026); *Manuel G.*, 2026 WL 1256358, at *4–5; *Mejia-Briones v. Warden*, No. 1:26-CV-1109-RP, 2026 WL 1245750, at *3 (W.D. Tex. May 5, 2026) ("The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this 'automatic continued deprivation of liberty for a noncitizen.'").

Finally, the third *Mathews* factor concerns the government's interest, including the administrative burdens that additional procedures would impose. In their objection to Magistrate Judge Elkins's R&R, Respondents assert that government has a "strong historical and practical" interest in administering the nation's immigration laws and preserving the detention framework that Congress established under § 1225(b)(2), and in doing so efficiently. (Dkt. 14 at 7–8.)

The Court acknowledges that these are important government interests. The Court also does not overlook that concluding the Due Process Clause requires Respondents to hold a bond hearing in this context could increase the government's burden and affects the application of § 1225(b)(2) to noncitizens like Petitioner. But until the Eighth Circuit's recent decision in *Avila*, the government routinely provided such bond hearings for detainees like Mr. Z.S. and had done so for decades. And in the Circuits which have reached the opposite decision, they continue to do so. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 72–73 (2d Cir. 2026) (finding that 8 U.S.C. § 1226(a), which includes a provision

authorizing release on bond, applied to noncitizens who are present in the U.S., but charged as inadmissible for entering without inspection and admission). There is no suggestion in the record that the burden is unmanageable.

For these reasons, the Court finds that Magistrate Judge Elkins's R&R correctly concludes that Mr. Z.S. has shown his due process rights are violated by his continued detention without additional procedural protections. The Court further agrees with Magistrate Judge Elkins that an individualized bond hearing is required at which an immigration judge assesses whether his release would pose a risk of flight or a danger to the community.

## III. Petitioner's Objections

Petitioner objects to the remedy of a bond hearing because he argues that his previous order of supervision was not properly revoked, and therefore the remedy should be immediate release. (Dkt. 15 at 7–8.) However, the record in support of this argument is incomplete. First, the record here does not contain the prior order of supervision, which would contain an indication of whether it was revoked. *See, e.g.*, *See Roberto B.Q. v. Lyons*, No. 26-CV-2656 (PJS/SGE), Dkt. 8, slip op. at 5 (D. Minn. June 10, 2026) (examining the order of release and noting that the section detailing its revocation is blank). Further, Petitioner offers no specifics regarding what that revocation should have looked like, had it occurred, essentially asking the Court to assume that the process wasn't followed. The Court will not order immediate release on this record.

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**

1. The Report and Recommendation (Dkt. 13) is **ACCEPTED**.

2. Respondents' Objections (Dkt. 14) are **OVERRULED**.

3. Petitioner's Objections (Dkt. 15) are **OVERRULED**.

4. The Petition (Dkt. 1) is **GRANTED IN PART** as follows:

    a. Petitioner's detention under § 1225 without an individualized bond hearing violates his due process rights.

    b. Respondents shall provide Petitioner with a bond hearing at which an individualized assessment is made regarding his risk of flight and whether releasing him will pose a danger to the community. This hearing must take place **within two weeks from the date of this Order.** Respondents must provide Mr. Z.S. and his counsel with advanced notice of the hearing promptly after it is scheduled, sufficient to allow his counsel to attend and prepare.

    c. If a bond hearing does not take place within two weeks, or if the Immigration Judge declines to reach the merits of the issue or determines that they lack the authority to do so, the Respondents shall immediately release Petitioner from custody in Minnesota with his personal effects.

5. The remainder of the Petition is **DENIED WITHOUT PREJUDICE**.

6. Respondents shall file a status report with the Court within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody detailing the results of the bond hearing or its actions released to release.

**Let judgment be entered accordingly.**

Date: September 25, 2026

*s/ Katherine M. Menendez*
Katherine M. Menendez
United States District Judge